## Mitchell v. Phillips, Appellant.

*Ejectment—Husband and wife—Conveyance by husband and wife.*

In an action of ejectment where the plaintiff claims under a deed from her husband, and the defendant under a sheriff's sale on an execution against the husband, the case is for the jury and a verdict and judgment for the plaintiff will be sustained, where there is evidence that at the time of the conveyance to the plaintiff by her husband, the latter was indebted to a co-partnership on an unsettled mutual account which the husband believed at the time was in his favor; that he retained enough personal property to meet such indebtedness if it should be decided that he was liable; that he had no intention to defraud the firm which was his only creditor; and that his motive in making the conveyance was to provide for his wife generally and particularly against apprehended machinations of a brother who had made trouble for him in the past.

Argued April 8, 1912. Appeal, No. 107, Jan. T., 1911, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1907, No. 342, on verdict for plaintiff in case of Rebecca R. Mitchell v. W. J. Phillips, et al. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment for land in the borough of Forty Fort. Before FERRIS, P. J.

At the trial the court returned a verdict for plaintiff.

On a rule for a new trial FERRIS, P. J., filed the following opinion:

At the trial it appeared (1) that the common source of title was Joseph T. Mitchell, husband of the plaintiff; (2) that, by a deed dated January 25th, 1902, and duly recorded two days later, he conveyed the land in dispute to his wife for the expressed consideration of one dollar and natural love and affection; (3) Parol evidence was given which, if believed by the jury, would

justify them in finding (a) that he was indebted at the time of the conveyance to his wife, (b) that he retained personal property sufficient to meet such indebtedness, (c) that this indebtedness arose from an unsettled mutual account between himself and a firm named Hyndman & Garney, and that Mitchell believed that upon settlement of their affairs the firm would be found to be indebted to him, (d) that he had no actual intent, in making the conveyance to his wife, to defraud, hinder, or delay the said firm, which was his only creditor, (e) that he was at that time, and had been for years, a market gardener and expected to continue in that business in another county of this State, (f) that his motive in making the conveyance in question was to make provision for his wife, generally, and particularly as against apprehended machinations of a brother who had made trouble for him in the past.

On the part of the defendant the evidence showed (1) that Hyndman & Garney, about six months after the conveyance by Mitchell to his wife, obtained judgment against Mr. Mitchell before a justice of the peace for one hundred ninety-five dollars and nineteen cents ($195.19); (2) that a transcript of this judgment was filed in the Common Pleas, and by proper proceedings the land in question was sold by the sheriff to Fred B. Davis, an attorney, who, with his wife, conveyed the same to W. J. Phillips, the defendant, for the consideration, expressed in the deed, of two thousand, six hundred dollars ($2,600); (3) at the sheriff's sale referred to, a notice was given by or on behalf of Mrs. Mitchell that the land levied upon and advertised for sale belonged to her and not to her husband, the execution defendant; (4) parol evidence was given which, if believed, would warrant the jury in finding that Mr. Mitchell was notified by the justice of the peace before the conveyance by Mitchell to his wife, that Hyndman & Garney had placed in his hands for collection a claim against Mitchell, which the justice states was the

identical claim for which judgment was obtained in a suit before him after the conveyance. This is denied by Mr. Mitchell who says that the only notice he received from the justice was after the judgment and to the effect that the judgment had been obtained.

The case was submitted to the jury with instructions that though indebted, a man may make provision for his wife by a voluntary conveyance of land, if, nevertheless, he retains sufficient property in his hands from which his creditors, by suit and execution, could compel payment, if necessary, unless such voluntary conveyance were a part of an actual scheme to defraud his creditors. Later on in his charge the trial judge used this language: "The idea is simply this, gentlemen. That that principle of law is intended to prevent fraud. And a conveyance which has no tendency to defraud anybody is good. If it was intended to defraud the creditors which a man had at the time, or if its tendency was to do it, so as to keep them out of their money, or hinder or delay them, why then it would be void. ...

... On the other hand there is testimony here given by himself, Mr. Mitchell, that he had been endeavoring for a long time to get a settlement with Hyndman & Garney; that they kept his pass book and would not let him have it; and that such was the condition of things, as I remember his testimony, at the time this deed was made. The question might arise in your minds, could he have had the purpose in his mind that a settlement might be in their favor, result in their favor and against him, and that he would try and hinder them from getting their money by putting the property in his wife's name? ...... If you believe that he made this deed to his wife in order to hinder and delay creditors which he had at the time he made the deed, including Hyndman & Garney, then your verdict should be for the defendant, because in that case the deed would be void under the statute."

Under all the testimony in the case there could be no

doubt that the judgment under which the sheriff's sale took place represented an indebtedness to Hyndman & Garney existing at the time of the conveyance to the wife. And it not being shown that there were any subsequent creditors at all, and it being perfectly apparent that the firm of Hyndman & Garney was an existing and not a subsequent creditor and that the question was distinctly submitted to the jury whether the conveyance to the wife tended to hinder, delay or defraud that particular firm, we do not think that, though the instructions were not so full and complete, perhaps, as they should have been were the rights of subsequent creditors in question, nevertheless they were correct with reference to existing creditors to which class Hyndman & Garney belonged, and could not have injured the defendant who claimed under that firm.

Being of opinion that the case was clearly for the jury and not being satisfied that a new trial should be granted for any of the reasons assigned, the motions are denied and a new trial refused.

*Errors assigned* were various rulings and instructions.

*L. Floyd Hess* and *W. Alfred Valentine,* for appellant. —Where property is claimed by a married woman, she must show by evidence which does not admit of a reasonable doubt, either that she owed it at the time of her marriage, or else acquired it afterwards, by gift, bequest or purchase. In the case of a purchase after marriage, the burden is upon her to prove distinctly that she paid for it with funds which were not furnished by the husband: Gamber v. Gamber, 18 Pa. 363; Keeney v. Good, 21 Pa. 349; Peirson v. Duncan, 162 Pa. 187; Heiges v. Pifer, 224 Pa. 628; Billington v. Sweeting, 172 Pa. 161; Sutton v. Guthrie, 188 Pa. 359; Coates v. Gerlach, 44 Pa. 43; Heath v. Page, 63 Pa. 108; Ketner

v. Donten, 15 Pa. Superior Ct. 604; Renninger v. Spatz, 128 Pa. 524; Werner v. Zierfuss, 162 Pa. 360.

*John D. Farnham,* for appellee.—The phrase "indebted at the time" (of a voluntary conveyance) must mean some debt bearing same proportion to the property retained, which may render its payment doubtful: Mateer v. Hissim, 3 P. & W. 160; Wilson v. Howser, 12 Pa. 109; Posten v. Posten, 4 Wharton (Pa.) 27; Miller v. Pearce, 6 W. & S. 97.

PER CURIAM, April 29, 1912:

The judgment is affirmed on the opinion of the learned president judge of the Common Pleas.